UNITED STATES

v.

**Airman Basic Warren R. WASSON, FR 322–74–4221 United States Air Force.**

**ACM S27774.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 Feb. 1988.

Decided 20 July 1988.

---

Appellate Counsel for the Appellant: Colonel Leo L. Sergi, Major Frank J. Spinner and Lieutenant Colonel Michael Sofocleous, USAFR.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Carole W. Hanson.

Before FORAY, MICHALSKI and MURDOCK, Appellate Military Judges.

### DECISION

MURDOCK, Judge:

This case discusses how the proof requirements for disrespect to a noncommissioned officer differ where the misconduct is alleged as disrespect in language from where it is alleged as disrespect in language and deportment.

The appellant was tried by special court-martial for driving while intoxicated, failing to obey an order, twice failing to go to his assigned duty, not being clean shaven, and being disrespectful *in language* to two noncommissioned officers. He pleaded guilty to driving while intoxicated, and not guilty to the other charges. He was found not guilty of one failure to go and failing to obey an order and guilty of the remaining charges. His approved sentence was a bad conduct discharge, confinement for four months, and forfeiture of $400 per month for four months. The appellant now, and at trial, asserts that the specification alleging disrespect fails to state an offense. Because we agree, and for other reasons

stated in the opinion, we set aside the specification and reassess the sentence.

The events leading to the court-martial began when the appellant's commander imposed nonjudicial punishment on him for having stolen a car stereo six months earlier. The punishment included 30 days of correctional custody. His conduct while in correctional custody and in the transition flight to which he was transferred resulted in the present charges.

Twenty days after the appellant entered custody, he was summoned to the correctional custody supervisors' office. He reported formally and remained at attention as required by correctional custody rules. The supervisors told him they were going to recommend he be transferred to the transition flight and processed for administrative discharge. When he heard this he said:

Sir, if you are going to separate me, I wish you would hurry it up because I'm tired of this crap.

When this language made its way into a specification the "Sir" had disappeared and it looked like this:

In that AIRMAN BASIC WARREN R. WASSON, United States Air Force, 380th Mission Support Squadron, Plattsburgh Air Force Base, New York, at Plattsburgh Air Force Base, New York, on or about 23 November 1987, was disrespectful in language toward Master Sergeant Wayne L. Stokes and Staff Sergeant George J. Zalasky, then known by the said AIRMAN BASIC WARREN R. WASSON to be noncommissioned officers, who were then in the execution of their offices, by saying to them, "If you are going to separate me, I wish you would hurry it up because I'm tired of this crap", or words to that effect.

Airman Wasson's words were charged as a violation of Article 91, UCMJ, 10 U.S.C. § 891. It provides, in pertinent part that:

Any warrant officer or enlisted member who—

.     .     .     .     .

(3) treats with contempt or is disrespectful in language or deportment toward a

warrant officer, noncommissioned officer, or petty officer while that officer is in the execution of his office;

shall be punished as a court-martial may direct.

Disrespect under both Articles 89 and 91 is discussed at Article 89, 10 U.S.C. § 889 (disrespect toward a superior commissioned officer):

Disrespectful behavior is that which detracts from the respect due the authority and person of a superior commissioned officer. It may consist of acts or language, however expressed, and it is immaterial whether they refer to the superior as an officer or as a private individual. Disrespect by words may be conveyed by abusive epithets or other contemptuous or denunciatory language. Truth is no defense. Disrespect by acts includes neglecting the customary salute, or showing a marked disdain, indifference, insolence, impertinence, undue familiarity, or other rudeness in the presence of the superior officer.

MCM, Part IV, paragraph 13c(3).

By using the words "was disrespectful in language toward ..." in the specification, the drafter identified this as a language case, rather than one involving deportment. As a language case, the words must contain abusive epithets, or contemptuous or denunciatory language in order to constitute an offense. MCM, Part IV, paragraph 13c(3).

Many reported cases involve disrespect, but only a few have discussed language-only cases. The most helpful is *United States v. Woltmann*, 22 C.M.R. 737 (C.G.B. R. 1956). In that case the accused was charged with disrespect in language and deportment toward a boatswain by saying "You can't keep me from going ashore", or words to that effect. The trial court's findings of guilty excepted the words "and deportment". This left the specification alleging only disrespect by words. The Board of Review held that since the words contained "no epithet, no obscene word nor any denunciatory language" they were insufficient to show disrespect by language. The Board also said:

[w]here the words spoken are not obviously disrespectful, the manner in which they are spoken may make them so; but that possibility does not exist here, for the court affirmatively found that the accused was not disrespectful in deportment; nor is there any testimony that he spoke the words in an insolent, rude, disdainful or impertinent manner. The specification as found proved must therefore stand or fall on the quality of the words themselves as being disrespectful.

22 C.M.R. at 739.

The Army Court of Military Review discussed disrespectful language in *United States v. Klein,* 42 C.M.R. 671 (A.C.M.R. 1970). *Klein* involved disrespectful language toward a commissioned officer, but the discussion of disrespect applies to the present case. The words alleged were "People get hurt like that, or words to that effect". The court said,

> We do not believe that the mere utterance of the words, "People get hurt like that or words to that effect" as alleged in the specification constitutes, per se, disrespectful language. In the absence of an averment in the specification under consideration that the quoted innocuous statement was made in a certain described manner evincing a disrespectful attitude, we are constrained to hold that the specification is legally insufficient to allege an offense.

42 C.M.R. at 672. The Manual definition of disrespect by words used in *Klein* was essentially the same as in the current version of the Manual. Paragraphs 168 and 170, MCM, 1969 (Rev.)

■ In the present case the specification was limited, even before trial, to language only. We agree with the Coast Guard Board that when the specification alleges language only, and not deportment, we cannot use evidence of the manner in which the words were spoken. Unlike the Coast Guard Board we do not feel free, in a language-only case, to use evidence that the words were spoken in an "insolent, rude, disdainful or impertinent manner". Marked disdain, indifference, insolence, impertinence, undue familiarity, or other rudeness are specifically listed by the Manual for Courts-Martial as characteristics of disrespect by deportment. MCM, Part IV, paragraph 13c(3).

■ "Crap" is the only word in the specification that is arguably disrespectful on its own. We are not bound by dictionary definitions in determining whether words are disrespectful. However, it can be useful to see how word scholars treat a word. Dictionaries identify two general senses in which this word can be used. The first sense is as an alternate term for excrement. The second sense, and the one we find was intended here, is a more general term. Webster's Third New International Dictionary, published in 1967, classifies it as slang meaning "something deceitful, useless, or empty." Synonyms are listed as nonsense and rubbish. Webster's Ninth New Collegiate Dictionary, published in 1986 defines this sense only by listing nonsense and rubbish as synonyms and noting that this use of the word is "sometimes considered vulgar".

■ A word is not rendered inherently disrespectful merely because it is sometimes considered vulgar. The conditions surrounding the use of the word are important. Words which might be acceptable when spoken to a guard at Buckingham Palace might be disrespectful if spoken to the Queen. We are being unrealistic, and more restrictive than the law requires, to expect only pristine, courtly language to be used in the Air Force. While the appellant's use of the word "crap" showed a certain roughness in his language, we are not convinced beyond a reasonable doubt that the word is inherently disrespectful.

Perhaps a more significant difficulty with this specification is the requirement that offensive words be spoken *toward* the alleged noncommissioned officers. MCM, Part IV, paragraph 15c(5). In *United States v. Whitaker,* 5 C.M.R. 539 (A.F.B.R. 1952), our predecessor body held that language is not actionable, even where it is clearly offensive, if it is addressed to the world at large, rather than to the person alleged. In *Whitaker,* the accused was charged with saying "to hell with it", sig-

nalling his refusal to complete the paperwork necessary to begin a move to a new duty station. The Board stated they were not convinced the words showed "the accused was disrespectful *toward* (the named individual)." 5 C.M.R. at 556.

A similar result was reached by the Army Court of Military Review in *United States v. Revels*, 41 C.M.R. 475 (A.C.M.R. 1969). In *Revels* the appellant, who was in pretrial confinement, had been kicked and yelled at by the confinement officer and the first sergeant. As these men walked away the appellant "shouted obscenities not directed to a specific person which caused the first sergeant to return and ask the appellant what he had said. The appellant replied 'nothing' or words to that effect." The government relied on this incident to charge disrespect toward the first sergeant. The Army Court held that they were not convinced beyond a reasonable doubt of the appellant's guilt as to the alleged disrespect. 41 C.M.R. at 480.

The present case suffers from the same problem. A fair reading suggests the word "crap" was a rhetorical remark not directed at anyone. The word apparently expressed the appellant's view of his situation. He may have been referring to the way he had been treated at the correctional facility, the papermill he had already seen and that he knew would be part of his administrative discharge, or the Air Force in general.

In a case somewhat similar to the present one, the Court of Military Appeals held that relatively neutral words could support a conviction for disrespect in language. *United States v. Barber*, 8 M.J. 153 (C.M.A.1979). The accused in *Barber* had told the noncommissioned officer in charge of the correctional custody facility that "if you have something to say about me, say it to my face". The Court held that the words "impl(ied) not only a rebuke for past conduct not stated to be unlawful, but a demand that future performance of even official duty conform to a standard imposed by the accused...." 8 M.J. at 154.

The present case can be distinguished from *Barber*. In *Barber* the seemingly neutral words carried disrespect in the implied rebuke to the past behavior of the sergeant being addressed. In our analysis of the present case we find that the appellant was not attempting to rebuke the sergeants for some past dereliction on their part, but was revealing his frustration and expressing his, probably correct, opinion that his discharge was still some time in the future.

We hold that the words as alleged and proved do not state an offense. Further, since they were not directed toward the noncommissioned officers, the words would not constitute disrespect even if they were inherently disrespectful. Accordingly, the findings of guilty of Specification 1 of Charge II and Charge II are set aside and this specification and charge are dismissed. The appellant's other assertion of error is without merit.

■ We must now consider the effect of our action on the sentence. We find only so much of the sentence as includes a bad conduct discharge, two months confinement, and forfeiture of $200 per month for two months to be appropriate. The findings of guilty and the sentence, both as modified, are

AFFIRMED.

Senior Judge FORAY concurs.

MICHALSKI, Judge (dissenting):

My dissent is directed to that part of the majority's decision that states the specification fails to state an offense. Art 91 was created to deal with a problem that adversly effects military authority. That problem is described by Art 91 as "insubordinate conduct". In discussing the concept of "disrespect" which is an integral element of this offense, MCM, Part IV, paragraph 13c(3) explains in pertinent part that, "disrespectful behavior is that which detracts from the respect due authority.... It may consist of acts or language.... Disrespect by words may be conveyed by abusive epithets, or other contemptuous or denunciatory language." It is my belief that the

following summary of the facts contained in the record of trial establishes beyond a reasonable doubt that the specification described such an offense.

A Master Sergeant, in charge of correctional custody, and his assistant, a Staff Sergeant were counselling the appellant, who was in correctional custody, about his deficient military bearing and behavior. Appellant was standing at attention about four feet in front of them, he looked directly at the noncommissioned officers to whom he was speaking and uttered the words contained in the specification that resulted in the finding of guilt by the military judge.

When his behavior is viewed in the context of the situation in which it occured, it was clearly the type of insubordinate conduct that Art 91 was designed to correct. I believe my brethren have concluded as they have by mistakenly limiting the focus of their attention on only one word, which word in my judgment, connotes contempt under certain circumstances as in this case. As an example, the first definition of the word "crap" found in Webster's Ninth Collegiate Dictionary, published in 1985 is "excrement- usu. considered vulgar." The words used by appellant conveyed disrespect for authority and when considered in the circumstances in which they were spoken demonstrate the commission of an Art 91 offense. I would affirm the finding of guilty of this specification.